UNITED STATES of America

v.

**Amin SHABAZZ**

and

**Richard McNiel.**

**Crim. A. No. 90–0132.**

United States District Court,
District of Columbia.

Oct. 15, 1990.

Kathleen Brandon, Asst. U.S. Atty., Washington, D.C., for the U.S.

Diane S. Lepley and Jensen E. Barber, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

Defendants in this action have pled guilty to violations of the Uniformed Controlled Substances Act. Mr. Shabazz entered a guilty plea to one count of Unlawful Conspiracy to Distribute Dilaudid (hydromorphone hydrochloride) in violation of 18 U.S.C. § 371, and Mr. McNiel pled guilty to one count of Distribution of Dilaudid in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C). The defendants have challenged the offense level determinations relevant to their sentencing under the United States Sentencing Guidelines.

Because base offense levels for drug offenses are correlated to the weight of the drugs involved in the offense, the issue presented by this case is whether the quantity of drugs to be measured includes the entire weight of the mixture containing the controlled substance or whether only the weight of the controlled substance itself is to be considered. The difference in these quantities in this case is significant.

Defendants' crimes involved the distribution of Dilaudid, a pharmaceutically manufactured prescription drug. The controlled substance in Dilaudid tablets is hydromorphone. While a Dilaudid tablet weighs approximately .09 grams, the hydromorphone in each Dilaudid tablet weighs only .004 grams. The defendants argue that the amount of drugs considered in determining their offense levels must be calculated based on the net weight of the hydromorphone involved in the offense and cannot be based on the gross weight of the Dilaudid tablets. If the Court were to accept defendants' argument, the Guideline sentencing range applicable to Mr. Shabazz would be 15–21 months rather than 51–63 months, and Mr. McNiel's range would be 10–16 months rather than 27–33 months.

Section 2D1.1(a)(3) of the United States Sentencing Guidelines governs the determination of base offense levels for these defendants. According to that section, a crime's base offense level is determined by calculating the weight of the drugs involved and then comparing the weight to the ranges of weights listed in the Drug

Quantity Table. Sentencing Guidelines § 2D1.1(a)(3). A footnote to the Drug Quantity Table states: "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." This footnote requires that offense level determinations be based on the gross weight of any mixture or substance containing a controlled substance listed in the Drug Quantity Table; the Drug Quantity Table, however, only lists weight ranges for certain controlled substances. In cases such as this, where the substance involved is not listed in the Drug Quantity Table, resort must be had to the Drug Equivalency Tables set forth in Note 10 to the Commentary to Section 2D1.1.[1] The defendants argue that the footnote cited above only applies to the specific substances listed in the Drug Quantity Table and does not apply to the controlled substances appearing in the Drug Equivalency Tables.

Because the footnote, which appears at the end of the Drug Quantity Table, refers to substances "set forth in the table," it is not unreasonable to read the note as applying only to those substances listed in that Table. However, in light of the relationship between Section 2D1.1 and its Commentary, the Court cannot adopt such a technical reading of the footnote. The Drug Equivalency Tables contained in the Section's Commentary are not distinct from the Drug Quantity Table; rather, they must be read as a supplement to Section 2D1.1, providing a means of referencing controlled substances not specifically listed in the text of that Section to the Drug Quantity Table. In this sense, the Drug Equivalency Tables provide an extension of the scheme established in the Drug Quantity Table. Accordingly, the substance of the footnote to the Drug Quantity Table

applies equally to the Drug Equivalency Tables. *See United States v. Bayerle,* 898 F.2d 28, 31 (4th Cir.1990) (applying gross weight standard to the determination of heroin equivalency of Dilaudid and Dolaphine tablets).

This conclusion is not contradicted by the fact that the substances listed in the Drug Equivalency Tables are listed according to the weight of the active ingredient rather than according to the name of the drug itself. In this case, hydromorphone, rather than Dilaudid, appears on the list. It is consistent with the "gross weight" scheme of the Guidelines to refer to the controlled substance rather than to its form as a mixture in providing equivalencies to drugs listed in the Drug Quantity Table. For example, as required by the gross weight rule, Dilaudid tablets containing .004 grams of hydromorphone would be converted to the same heroin equivalency as Dilaudid tablets with a stronger dosage as long as the tablets weighed the same amount. Moreover, because two different drugs may contain the same controlled substance, it is more efficient for the Drug Equivalency Tables to refer to the controlled substance rather than the particular drug form.

Finally, the specific language of Note 10 supports the Court's conclusion: "The Drug Equivalency Tables set forth below provide conversion factors for other substances, which the Drug Quantity Table refers to as "equivalents" of these drugs. For example, one gram *of a substance containing* oxymorphone, a Schedule I opiate, is to be treated as the equivalent of five grams of a substance containing heroin in applying the Drug Quantity Table." This example clearly represents the intention of the Guidelines Commission that drug equivalency conversions be made to the gross weight of the mixture containing

---

1. Defendants argue that the calculation of the weight of the controlled substance in this case is governed by Note 11 of the Commentary to Section 2D1.1 rather than Note 10. Note 11, by its own terms, applies "[i]f the number of doses, pills, or capsules but not the *weight of the controlled substance* is known...." In this case, defendants claim, the number and weight of the

Dilaudid tablets was known, but not the weight of the controlled substance in the Dilaudid tablets. The defendants concede, however, that the weight of hydromorphone in the Dilaudid tablets is readily ascertainable from the manufacturer's markings on the tablets. Therefore, according to defendants' own evidence, Note 11 does not apply.

the controlled substance listed in the Drug Equivalency Tables.

Defendants claim that the Court's reading of Guideline Section 2D1.1, which requires that the gross weight of the drugs be considered in determining base offense levels for substances listed in the Drug Equivalency Tables, contradicts the statutory scheme of 21 U.S.C. § 841(b). According to defendants, that section, which prescribes penalties for certain drug offenses according to the weight of the drugs involved, does not impose a "gross weight" standard for all controlled substances. Defendants' argument is based on the fact that Subsections 841(b)(1)(A) and 841(b)(1)(B) specifically refer to weights of "mixtures or substances" containing certain controlled substances, whereas Subsection 841(b)(1)(C), which applies in this case, does not include similar language. Because of this discrepancy in language, defendants claim that Congress intended that a "net weight" standard be used for controlled substances listed in the latter subsection.

Contrary to defendants' suggestion, Subsection 841(b)(1)(C) does not mention weights at all; rather, it is a catch-all provision establishing maximum sentences for offenses involving controlled substances not covered by Subsections 841(b)(1)(A), (B) or (D). The subsection provides no suggestion one way or another whether sentences imposed within its limits are to set according to gross weight or net weight. Thus, reliance on this statutory language is misplaced.[2] *See United States v. Gurgiolo,* 894 F.2d 56, 60–61 (3rd Cir.1990) (rejecting argument that language of § 841(b)(1)(C) created exception to "gross weight" rule).

For the foregoing reasons, the Probation Department correctly determined the base offense levels for the defendants based on the weight of the Dilaudid tablets and was not required to limit its measurement to

the weight of the hydromorphone contained in the tablets.

---

**2.** Defendants suggest that the relevant statute and Guideline reflect a legislative policy to treat pharmaceutically manufactured drugs, like hydromorphone, differently than drugs which are illegal *per se.* Insufficient ambiguity exists in the statutory or Guideline language, however, to require this Court to examine the legislative intent underlying the language.